United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUBEN A.,[1]

Plaintiff,

v.

SSA COMMISSIONER,

Defendant.

Case No.  24-cv-07137-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 10, 15

## I.    INTRODUCTION

Plaintiff Ruben A. moves for summary judgment to reverse the decision of the Commissioner of Social Security, denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 10.  Defendant cross-moves to affirm.  ECF No. 15.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.[2]

## II.    PROCEDURAL HISTORY

On September 16, 2021 and September 30, 2021, respectively, Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, stating a disability onset date of May 6, 2020.  Administrative Record (AR) 345-51, 356-57.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  AR 164-65, 214-15, 232.  An ALJ held a

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 5, 7.

hearing on October 24, 2023 and issued an unfavorable decision on December 5, 2023. AR 79-112, 15-36. The Appeals Council denied Plaintiff's request for review on August 13, 2024. AR 1-4. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III.     ISSUES FOR REVIEW

Plaintiff raises four issues on appeal: (1) the ALJ failed to properly evaluate whether his breathing dysfunction medically equaled Listing 3.02; (2) the ALJ formulated an RFC[3] that failed to fully account for Plaintiff's cognitive dysfunction and extreme obesity; (3) the ALJ failed to properly evaluate the treating medical source opinion of Plaintiff's pulmonologist, Peter Kao, M.D.; and (4) the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of respiratory dysfunction.

## IV.     STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation

---

[3] As discussed below, residual functional capacity (RFC) is defined as the most the claimant can still do despite their imitations. 20 C.F.R. § 404.1545(a)(1).

1    omitted).  If "the evidence can reasonably support either affirming or reversing a decision," the

2    Court must defer to the ALJ's decision.  *Id.* (citation omitted).

3        Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is

4    harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that,

5    despite the legal error, the agency's path may reasonably be discerned, even if the agency explains

6    its decision with less than ideal clarity."  *Brown-Hunter*, 806 F.3d at 492 (cleaned up).  But "[a]

7    reviewing court may not make independent findings based on the evidence before the ALJ to

8    conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the

9    ALJ asserts."  *Id.* (cleaned up).

10                    **V.    DISCUSSION**

11   **A.    Framework for Determining Whether a Claimant Is Disabled**

12       A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any

13   substantial gainful activity by reason of any medically determinable physical or mental

14   impairment which can be expected to result in death or which has lasted or can be expected to last

15   for a continuous period of not less than twelve months" and (2) the impairment is "of such severity

16   that he is not only unable to do his previous work but cannot, considering his age, education, and

17   work experience, engage in any other kind of substantial gainful work which exists in the national

18   economy."  42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

19   To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential

20   analysis.  20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same

21   standard for supplemental security income).  The claimant bears the burden of proof at steps one

22   through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

23       At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

24   gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

25   involves significant mental or physical activities."  *Ford*, 950 F.3d at 1148 (cleaned up).  Here, the

26   ALJ determined Plaintiff had not performed substantial gainful activity since May 6, 202.  AR 20.

27       At step two, the ALJ decides whether the claimant's impairment or combination of

28   impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

1   claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

2   (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

3   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

4   impairments: degenerative disc disease of the lumbar spine, scoliosis of the thoracic spine,

5   osteoarthritis of the knees, obesity, congestive heart failure, hypertension, obstructive airway

6   disease (mild), obstructive sleep apnea, peripheral neuropathy, borderline intellectual functioning,

7   anxiety disorder, and eating disorder.  AR 21.

8        At step three, the ALJ evaluates whether the claimant has an impairment or combination of

9   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

10   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

11   describe impairments that are considered "to be severe enough to prevent an individual from doing

12   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

13   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

14   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

15   medical criteria.  An impairment that manifests only some of those criteria, no matter how

16   severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

17   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

18   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

19   age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

20   did not have an impairment or combination of impairments that meets the listings.  AR 21-22.

21        If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

22   the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

23   despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

24   perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

25   that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

26   it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

27   perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

28   determined Plaintiff has the RFC to

United States District Court
Northern District of California

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He should not climb ladders, ropes, and scaffolds. He could occasionally climb ramps and stairs. He should not be required to balance as defined in the SCO/ DOT. He could occasionally stoop, kneel, crouch, and crawl. He should not work in extreme heat or extreme cold. He should not work around concentrated levels of fumes, odors, dusts, gases, and poor ventilation. She should not work at unprotected heights or have the operational control of moving, dangerous, or vibrating machinery. He could understand, remember, and carry out simple instructions and tasks. He also would be limited to work involving only simple, work related decisions; only occasional changes in the work setting; and no production paced work, such as on a moving, assembly line work or work involving hourly quotas. Bench work and daily quotas would be acceptable.

AR 25.  Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work. AR 33.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[4] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[5]  *Id.*  Here, the ALJ determined there are jobs that exist in

---

[4] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*
[5] The DOT classifies jobs by their exertional and skill requirements.  20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v.*

1    significant numbers in the national economy that Plaintiff can perform.  AR 34.

2    **B.      Step Three: Listing 3.02**

3          Plaintiff argues the ALJ failed properly evaluate whether his breathing dysfunction

4    medically equaled Listing 3.02 (chronic respiratory disorders).  Pl.'s Mot. at 8-10.  Plaintiff

5    testified he was unable to work full-time and had problems walking, in part due to shortness of

6    breath.  AR 86, 88.  He testified he did not use a CPAP machine at night because he could not

7    adjust the pressure in a way that would make it comfortable.  AR 91-92.

8          On May 6, 2015, Plaintiff went to the emergency room for shortness of breath.  AR 897.

9    Later that month he was found to have severe obstructive sleep apneas and hypopneas associated

10   with oxygen desaturation.  AR 887.  Pulmonary function testing suggested "[m]oderately severe

11   airway obstruction, overinflation and a response to bronchodilators [] consistent with a diagnosis

12   of asthma."  AR 864.

13         In August 2021 Plaintiff reported having ongoing shortness of breath with activity and

14   lower extremity swelling.  AR 948.  His oxygen saturation was 71% on room air, and he exhibited

15   moderate distress on examination.  AR 1134-35.  X-rays of Plaintiff's chest showed an enlarged

16   heart with pulmonary vascular redistribution and hazy interstitial prominence throughout his

17   lungs.  AR 1149.  In October 2021 Plaintiff reported he had difficulty using his BiPAP breathing

18   machine because the pressure was too high.  AR 936.

19         In January 2022 Plaintiff had an FEV1[6] score of 3.05.  AR 1439.  Later that month, he

20   exhibited respiration levels suggestive of moderate pulmonary hypertension, likely the result of

21   chronic hypoxemia at night due to severe obstructive sleep apnea.  AR 1364.  In April 2022 it was

22

23   _____

     *Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally
24   performed is usually the Dictionary of Occupational Titles.").
     [6] "Spirometry, which measures how well you move air into and out of your lungs, involves at least
25   three forced expiratory maneuvers during the same test session.  A forced expiratory maneuver is a
     maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of
26   air over time.  The volume of air you exhale in the first second of the forced expiratory maneuver
     is the FEV1.  The total volume of air that you exhale during the entire forced expiratory maneuver
27   is the FVC.  We use your highest FEV1 value to evaluate your respiratory disorder under 3.02A,
     3.03A, and 3.04A, and your highest FVC value to evaluate your respiratory disorder under 3.02B,
28   regardless of whether the values are from the same forced expiratory maneuver or different forced
     expiratory maneuvers."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 3.00 E1.

United States District Court
Northern District of California

noted that Plaintiff's health status was compromised by his obesity, with a body mass index of 61.61. AR 1359. He was advised to undergo a gastric bypass revision surgery (he previously underwent a gastric bypass sleeve surgery in 2015), but he would need to lose significant weight to achieve a body mass index under 55 before he could undergo such surgery. AR 1357, 1359, 1360. In April 2022 Plaintiff weighed 544 pounds, and his body mass index was 62.88. AR 1429.

In May 2022 Dr. Kao, Plaintiff's treating pulmonologist, noted he had symptoms of morbid obesity and exertional shortness of breath. AR 1352. Dr. Kao opined that Plaintiff's pulmonary function tests showed "severe restriction with reduced diaphragm strength." *Id.* Later that month, Plaintiff had an FEV1 score of 2.87. AR 1395. The results were suggestive of moderately severe restrictive defect, which was confirmed with lung volume testing, and MIP and MEP testing was consistent with neuromuscular weakness. AR 1396.

In June 2022 Plaintiff reported difficulty breathing with exertion. AR 1523. He weighed 554 pounds, with a body mass index of 65.69. *Id.*

In October 2022 Plaintiff stated he was not using his breathing device regularly because he felt the pressure was too high, and the RAMP setting was too short and made him feel very uncomfortable. AR 1340. Based on Plaintiff's most recent bariatric evaluation and the comorbidities associated with his body mass index, a revision gastric bypass surgery was recommended, but he needed to lose significant weight prior to such surgery. *Id.*

In February 2023 Dr. Kao noted Plaintiff had not been using his nighttime ventilator because he felt the setting was excessive and uncomfortable. AR 1487. Dr. Kao noted that Plaintiff exhibited a severe reduction in diaphragm strength on MEP and MIP testing, and spirometry testing showed he had an FEV1 of 2.79. AR 1488. Dr. Kao diagnosed "severe respiratory insufficiency that makes him incapable of working, and support his total disability." AR 1489. On February 27, 2023, Dr. Kao completed a Physical Residual Functional Capacity Questionnaire. AR 1480-83. Dr. Kao reported that he started treating Plaintiff on January 24, 2022, and had seen him every nine months. AR 1480. He reported that Plaintiff had a diagnosis of respiratory failure and morbid obesity, he had limited activity due to respiratory insufficiency, he had symptoms of shortness of breath with minimal exertion, and he had clinical findings of

weak diaphragm muscles and restrictive lung disease.  *Id*.  Dr. Kao opined that Plaintiff had significant limitations in his ability to walk, sit, stand, lift, and perform postural activities; and he would miss more than four days of work per month.  AR 1481-83.  When asked to indicate the earliest date when the limitations noted in the form first applied, Dr. Kao responded "2015."  AR 1483.

In December 2023 Plaintiff returned to Dr. Kao "for management of exertional shortness of breath, diaphragm weakness in a context of morbid obesity."  AR 67.  Plaintiff weighed 549 pounds.  AR 66.  Dr. Kao noted that pulmonary function testing showed "further weakening of his diaphragm strength, and progressive reduction in his FEV1 from 3.02 on 5/3/22 to 2.09 on 12/4/23."  AR 70.  Dr. Kao found that Plaintiff's FEV1 score of 2.09 reflected a severe obstructive ventilatory defect.  AR 55.  He was concerned about Plaintiff's progressive muscle weakness and loss of lung function.  AR 70.

The ALJ found Plaintiff's obstructive airway disease to be a severe impairment at step two of the sequential process, after which she considered the severity of the impairment under the listings.  AR 22.  However, the ALJ found Plaintiff's impairment did not meet or equal the criteria of Listing 3.02.  *Id.*

Plaintiff argues the ALJ failed to provide more than a passing and boilerplate notation that she considered Listing 3.02, failed to discuss the Listing criteria, and failed to compare his FEV1 scores with the corresponding criteria in the Listing.  Pl.'s Mot. at 10.

### 1.    Legal Standard

At step three, the ALJ considers whether the claimant meets or equals a listed impairment.  20 C.F.R. § 416.920a(d)(2).  The listings describe impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity."  *Sullivan*, 493 U.S. at 532 (emphasis in original).  If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(d).  The claimant bears the burden of establishing a prima facie case of disability under the listings.  *See Thomas*, 278 F.3d at 955; 20 C.F.R. § 404.1520(a)(4)(iii).

United States District Court
Northern District of California

1    An impairment meets a listing when all the medical criteria required of that listing is

2    satisfied.  20 C.F.R. § 404.1525(c)(3); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his

3    impairment matches a listing, it must meet all of the specified medical criteria.  An impairment

4    that manifests only some of those criteria, no matter how severely, does not qualify."); *Tackett*,

5    180 F.3d at 1099 ("To meet a listed impairment, a claimant must establish that he or she meets

6    each characteristic of a listed impairment relevant to his or her claim.").  "To equal a listed

7    impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in

8    severity and duration' to the characteristics of a relevant listed impairment . . .."  *Tackett*, 180 F.3d

9    at 1099 (quoting 20 C.F.R. § 404.1526(a)).  "The mere diagnosis of an impairment . . . is not

10   sufficient to sustain a finding of disability."  *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).

11        **2.        Analysis**

12        Listing 3.02 applies to chronic respiratory disorders due to any cause except cystic fibrosis.

13   20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02(a) (Listing 3.02).  A claimant may meet Listing

14   3.02 in four different ways: (1) A forced expiratory volume in the first second of a forced

15   expiratory maneuver value (FEV1) at or below the listing level based on age, gender, and height

16   under 3.02A; (2) a forced vital capacity value (FVC) at or below the listing level for age, gender,

17   and height under 3.02B; (3) a chronic impairment of gas exchange demonstrated by a diffusing

18   capacity of the lungs for carbon monoxide value (DLCO) or other tests under 3.02C; or (4)

19   exacerbations or complications requiring hospitalizations under 3.02D.  20 C.F.R. Part 404,

20   Subpart P, Appendix 1, Listing 3.02A, 3.02B, 3.02C, or 3.02D.

21        For an adult male over 20 years of age and 76 inches tall such as Plaintiff (AR 863), the

22   listing-level FEV1 is 1.90 liters.  *Id.*, Listing 3.02A, Table I-B.  The listing-level FVC is 2.40

23   liters.  *Id.*, Listing 3.02B, Table II-B.  The DLCO criteria is 12.5 mL CO (STPD)/min/mmHg.  *Id.*,

24   Listing 3.02C1, Table III.  The primary measurement at issue in this case is Plaintiff's FEV1

25   values.  The record shows Plaintiff had an FEV1 score of 3.05 in January 2022, 2.87 in May 2022,

26   2.79 in February 2023, and 2.09 in December 2023.  AR 54-55, 1395, 1439, 1489.  Because

27   Plaintiff's FEV1 scores are all higher than the technical parameters of the Listing, the ALJ

28   correctly found Plaintiff does not meet the requirements of Listing 3.02.  *See James S. v. Saul*,

United States District Court
Northern District of California

2021 WL 1587903, at *15 (D. Alaska Apr. 22, 2021) ("Because Plaintiff's FEV1 scores after bronchodilation are outside the technical parameters of the Listing, Plaintiff does not meet the requirements of Listing 3.02."); *Sheryl P. v. Saul*, 2020 WL 6892880, at *2 (C.D. Cal. Nov. 24, 2020) (plaintiff did not meet requirements of 3.02A where FEV1 scores were higher than minimum in Listing. As to Plaintiff's contention that the ALJ failed to adequately explain her evaluation of the Listings, the record shows the ALJ found Plaintiff's obstructive airway disease to be a severe impairment at step two of the sequential process, analyzed the medical evidence and Plaintiff's subjective allegations, considered the severity of his impairment under the Listings, and found his impairment did not meet or equal the criteria of Listing 3.02 or 3.03. AR 22.

Plaintiff maintains his impairments, when considered together, equal a listing because his "extreme obesity and excess weight exacerbated his pulmonary dysfunction and supported a finding of medical equivalence." Pl.'s Mot. at 9. If a claimant's impairment does not meet the criteria of a listed impairment, he may still be disabled if the impairment equals a listed impairment. 20 C.F.R. § 416.920(d); *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("At the third step of the evaluation, a claimant's impairment or combination of impairments is medically equivalent to a listed impairment—establishing a disability and ending the five-step inquiry—if the claimant's impairment or combination of impairments 'is at least equal in severity and duration to the criteria of any listed impairment.'") (quoting 20 C.F.R. § 416.926(a). A claimant must "present medical findings equal in severity to all the criteria for the one most similar listed impairment" to establish equivalency, *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), and may not rely simply on "overall functional impact." *Kennedy*, 738 F.3d at 1176.

Plaintiff argues it was "reasonable to conclude" a combination of obesity and pulmonary dysfunction equaled the listing. Pl.'s Mot. at 9. However, he has not presented medical findings that are "equal in severity" to the criterion for Listing 3.02A, which addresses the volume of air that an individual with a chronic respiratory disorder can expire in one second. Although his claim might be construed as an argument that his other impairments cumulatively would contribute to a lower FEV1 value, Plaintiff has failed to show or explain why the FEV1 measurements themselves do not capture the limitations that arise from lung function and obesity.

1    "Listed impairments are purposefully set at a high level of severity because 'the listings were

2    designed to operate as a presumption of disability that makes further inquiry unnecessary.'"

3    *Kennedy*, 738 F.3d at 1176 (quoting *Zebley*, 493 U.S. at 532).  While Plaintiff asserts that obesity

4    plus pulmonary impairment establishes listing-level equivalence, that is not the standard.  As such,

5    the ALJ did not err in concluding that Plaintiff had not equaled the listing requirement for 3.02A.

6    *See Sheryl P.*, 2020 WL 6892880, at *2 (finding plaintiff could not show asthma, lung function,

7    and obesity symptoms combined could establish criteria for Listing 3.02A).

8            Because the medical record does not contain medical findings establishing that Plaintiff

9    meets or equals Listing 3.02, the Court finds he failed to meet his burden of proving he is per se

10   disabled at step three.

11   **C.**     **Subjective Testimony Regarding Respiratory Dysfunction**

12           Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his

13   allegations of respiratory dysfunction.  Pl.'s Mot. at 2.  He argues the objective medical evidence

14   in the record establishes respiratory impairments that could reasonably be expected to cause

15   shortness of breath, but the ALJ "failed to legitimately and accurately evaluate the results of the

16   pulmonary function testing and adequately consider such evidence in the context of Plaintiff's

17   extreme obesity" and "failed to identify a valid conflict between Plaintiff's alleged limitations and

18   his work as a security guard."  *Id.* at 2, 4.

19           **1.**     **Legal Standard**

20           "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

21   must engage in a two-step analysis." *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009); *Leon v.*

22   *Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017) (as amended); *Diedrich v. Berryhill*, 874 F.3d 634,

23   638 (9th Cir. 2017); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (as amended);

24   *Garrison*, 759 F.3d at 1014; *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  Under the

25   first step, "the ALJ must determine whether the claimant has presented objective medical evidence

26   of an underlying impairment which could reasonably be expected to produce the pain or other

27   symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007).  If this test is

28   satisfied and there is no evidence of malingering, "the ALJ can reject the claimant's testimony

United States District Court
Northern District of California

11

about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1036.

Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted). "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." (internal citations omitted). *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021). *See also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("the ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."). However, "the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina,* 674 F.3d at 1112 (citation and internal quotations omitted). Likewise, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Soc. Sec. Ruling (SSR)[7] 16-3P (S.S.A. 2016).

In determining whether an individual's symptoms will reduce her capabilities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina,* 674 F.3d at 1112 (citations and internal quotations omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.,* 807 F.3d 996, 1006 (9th Cir. 2015) (as amended) (to assess credibility the ALJ "may consider, among other factors, 'ordinary techniques of credibility evaluation,' 'inadequately explained failure to seek treatment or to follow a prescribed course of treatment,' and 'the

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

United States District Court
Northern District of California

1    claimant's daily activities'").

2        **2.    Analysis**

3        The ALJ found Plaintiff's "medically determinable impairments could reasonably be

4    expected to cause the alleged symptoms; however, the claimant's statements concerning the

5    intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

6    medical evidence and other evidence in the record for the reasons explained in this decision."  AR

7    26.  In terms of Plaintiff's respiratory issues, the ALJ noted he had large gaps in treatment.  AR

8    28.  While he had "some noted respiratory and cardiac treatment," there was "little evidence of

9    edema outside of subjective reports, which he said were intermittent."  AR 28-29.  The ALJ noted

10   that "[o]utside of short lived acute treatment, most of his respiratory and lung examinations were

11   normal.  His recent imaging and echo were also normal.  He did report exertional shortness of

12   breath, but somewhat inconsistent with the indication in the file, he had quite minimal findings on

13   pulmonary function tests and often had unlabored breathing and normal SATs outside of acute

14   treatment that did not persist."  AR 29.  While objective evidence is not the end-all when

15   considering a claimant's subjective complaints, it is still a useful indication of the intensity and

16   persistence of alleged symptoms.  20 C.F.R. § 404.1529(c)(2).  Thus, "[w]hen objective medical

17   evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may

18   indeed weigh it as undercutting such testimony."  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir.

19   2022) (emphasis original); *Wilcoxson v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1366935, at *7

20   (D. Ariz. Mar. 29, 2014) (examination findings can reinforce an ALJ's finding that a claimant's

21   improvement undermines his subjective complaints).  While Plaintiff alleged extreme limitation in

22   standing, walking, sitting, and lifting, the ALJ noted that examinations generally showed normal

23   and unassisted gait, intact coordination, and improved left shoulder strength and range of motion.

24   AR 29 (citing AR 915, 955, 1521, 1527).  The ALJ also pointed to gaps in treatment, highlighting

25   the gap from 2019 into 2021.  AR 28, 33.  An ALJ may discount a claimant's subjective

26   complaints when they are disproportionate to his course of treatment, including unexplained gaps

27   in treatment.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's finding

28   when the claimant went three or four months without back treatment).

United States District Court
Northern District of California

The ALJ also compared Plaintiff's claims with his admitted daily activities and part-time work. AR 28-29, 30 (citing AR 93-94, 1257). The ALJ noted Plaintiff reported hobbies of traveling, off-roading, and fixing bikes. AR 30 (citing 1257 ("When asked his hobbies and interests [Plaintiff] stated, 'Hang out with my friends, travel, off- roading, fixing bikes. I'll take something apart and put it back together, paint it.'")); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ can consider the claimant's daily activities when evaluating symptom testimony); *Nadon v. Bisignano*, 145 F.4th 1133, 1137 (9th Cir. 2025) (affirming ALJ's basis for discounting subjective testimony where claimant reported being able to take her daughter to school, handle personal care, perform household cleaning, prepare meals, use a computer, watch TV, shop in stores for 20 to 30 minutes, handle finances, and go camping).

The ALJ also referenced Plaintiff's part-time work. *See Nadon*, 145 F.4th at 1136 ("An ALJ is permitted to consider any work done by a claimant when evaluating a disability claim, regardless of whether the work constitutes substantial gainful activity."); *Ford*, 950 F.3d at 1156 ("An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled."); 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). In this context, the ALJ noted Plaintiff's testimony that he sometimes stood the whole time he is working, up to six hours at one time. AR 26 (citing AR 94-95 ("Q And so during the six-hour shift, were you standing the entire six hours? A Yes. Yes.")). Plaintiff argues that his work was not inconsistent with his respiratory dysfunction, noting his testimony that he had shortness of breath when walking from where he was posted at work to the restroom. Pl.'s Mot. at 5 (citing AR 99). However, an ALJ may reasonably rely on a claimant's activities to discount allegations of totally disabling symptoms where the activities undercut those allegations, even if they suggest some difficulty in functioning. *See Smartt*, 53 F.4th at 499 ("Even if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'") (quoting *Molina*, 674 F.3d at 1113)). Ultimately, the "clear and convincing" standard requires an ALJ to show her work, which the ALJ did here. *Id.*

14

The Court finds the ALJ's subjective symptom assessment was reasonable, and "it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499; *Tackett*, 180 F.3d at 1098 ("If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.") (internal quotation marks omitted). Rather, a reviewing court must affirm the ALJ's findings so long as "more than a mere scintilla" of evidence supports them. *Biestek*, 587 U.S. at 103 (internal quotations omitted). So, even when "evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Accordingly, the Court finds the ALJ's decision must be upheld.

**D.    Residual Functional Capacity**

The ALJ found that due to degenerative disc disease of the lumbar spine, scoliosis of the thoracic spine, osteoarthritis of the knees, obesity, congestive heart failure, hypertension, mild obstructive airway disease, obstructive sleep apnea, peripheral neuropathy, borderline intellectual functioning, anxiety disorder, and an eating disorder, Plaintiff could at most perform simple, light work with occasional climbing, no balancing, and other occasional postural limitations as well as environmental restrictions, to include avoidance of temperature extremes, respiratory irritants, and hazards. Additionally, he was limited to only occasional changes in the work setting with no production rate work. AR 21, 25. Plaintiff argues the ALJ committed error in that she failed to "fully account" for his cognitive dysfunction and extreme obesity. Pl.'s Mot. at 10-14.

**1.    Legal Standard**

A Social Security claimant's RFC is what the claimant can do despite his or her mental and physical limitations. 20 C.F.R. § 404.1545(a)(1); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p: Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996).

"In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)(2)). The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

"However, while the regulations require that the ALJ 'consider the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC.'" *L.R.M. v. O'Malley*, 2024 WL 4133813, at *11 (N.D. Cal. Sept. 9, 2024) (quoting *Rania v. Kijakazi*, 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021), *report and recommendation approved*, 2022 WL 95228 (E.D. Cal. Jan. 10, 2022)); *see also Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) ("Consideration of 'the limiting effects of all impairments' does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."). "Provided the ALJ does not rely on boilerplate language, but actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment, the ALJ has not committed legal error." *Medlock*, 2016 WL 6137399 at *5.

### 2. Analysis

#### a. Cognitive Dysfunction

On November 19, 2021, Megan Stafford, Psy.D., performed a comprehensive psychological evaluation. AR 1255-60. Plaintiff reported that he was diagnosed with a learning disability while attending school and received special education. AR 1255. He reported having an onset of anxiety and depression with the COVID-19 pandemic. AR 1255-56. For his depression, Plaintiff reported" "Laziness. Pretty much eating more, more junk food. I'm not supposed to. That's about it." AR 1255. For anxiety, Plaintiff reported: "More anxious like I want to finish the [junk and fast] food. I'll buy something and the next thing you know, I won't be able to stop. I have to finish it." AR 1256. Plaintiff "denied any suicide attempts, current suicidal ideation, or psychiatric hospitalizations." *Id*. Plaintiff's concentration, persistence, and pace were found to be

within normal limits, and his thought process was grossly logical, organized, and coherent.  AR 1257.  No impairment in expressive or receptive language was observed, verbal response time was within normal limits, and Plaintiff's memory was generally intact.  *Id.*  During the evaluation, Plaintiff recalled 3 out of 3 items immediately and 0 out of 3 after 3 minutes; he was able to perform three digits forward and backward; he was able to say how many legs a dog has and the colors of the American flag; he was able to identify the name of the President, the Vice President, and the Governor; he was unable to calculate that seven quarters equaled $1.75; he was unable to complete serial 3s; he was unable to spell WORLD; and he was able to follow a basic three-step command.  AR 1257-58.  Testing placed Plaintiff in the "mild intellectual disability range" and revealed Plaintiff had a full-scale IQ of 61, which Dr. Stafford found was a valid estimate of his intellectual functioning, and which reflected a mild intellectual disability.  AR 1258-59.

Dr. Stafford opined:

> The overall clinical presentation was of an individual who is a fair historian.  Clinical observation and the claimant's pattern of performance suggest overall intellectual ability within the borderline intellectual functioning range.  The claimant's memory function was generally intact.  Prognosis appears guarded related to intellectual functioning but fair related to his symptoms of anxiety, depression, and food addiction.

> . . .

> The claimant's ability to perform simple and repetitive tasks is unimpaired.

> The claimant's ability to perform detailed and complex tasks is moderately impaired due to a history of requiring additional resources to complete difficult tasks.

> The claimant's ability to accept instructions from supervisors is mildly impaired.

> The claimant's ability to interact with co-workers, supervisors, and the public is unimpaired.

> The claimant's ability to perform work activities on a consistent basis without special or additional instructions is mildly impaired.

> The claimant's ability to maintain regular attendance in the workplace is unimpaired.

> The claimant's ability to complete a normal workday /workweek without interruptions from a psychiatric condition is mildly impaired.

United States District Court
Northern District of California

The claimant's ability to deal with the usual stress encountered in the workplace is mildly impaired.

AR 1259-60.

In line with Dr. Stafford's opinion, the ALJ found Plaintiff was able to perform simple instructions and tasks, make simple work-related decisions, and handle occasional changes with no production-paced work.  AR 25.

Plaintiff argues Dr. Stafford's assessment of mental work restrictions, and the ALJ's corresponding RFC finding, did not adequately accommodate his cognitive dysfunction as reflected in the results of the psychological evaluation and cognitive testing.  Pl.'s Mot. at 11.  He maintains "a full-scale IQ of 61 was significantly low and reflected greater dysfunction than a mere limitation to simple work with occasional changes and no product-rate pace."  *Id.*  Plaintiff also argues Dr. Stafford's opinion was internally inconsistent and therefore deserved less consideration.  *Id.* at 12.  He notes that, despite observing he could recall 0 out of 3 words within 3 minutes and had memory scores in the borderline range of intellectual functioning, Dr. Stafford went on to opine that Plaintiff's memory function was "generally intact."  *Id.* (citing AR 1259).  Plaintiff also notes Dr. Stafford did not assess any limitations accounting for her findings that he had reading, spelling, and math scores in the mild range of intellectual functioning.  *Id.*  Plaintiff argues that "while Dr. Stafford found [his] test scores to be valid, her assessment of mental limitations arising from these test scores appears to be a gross overstatement of [his] functional capacity."  *Id.*

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'"  *Biestek*, 587 U.S. at 103 (quoting 42 U.S.C. § 405(g)).  In terms of Plaintiff's mental health, the ALJ highlighted that he continued to work part-time and, while the consultative examination revealed some deficits in cognitive abilities, he was able to follow three-step commands and was described as having an adequate fund of knowledge.  AR 30 (citing AR 1257-58).  Moreover, other indications in the record suggested minimal cognitive findings, such as his ability to follow complex commands.  *Id.* (citing AR 1371 (11/29/2021 mental status exam finding Plaintiff "is awake, alert, oriented with normal fund of knowledge.  Speech is fluent and

conversant with comprehension intact.  Able to attend and concentrate.  Intact ability to follow complex commands and answer questions appropriately.”)); *see also* AR 1296; 1308 (noting “average intelligence”).  Further, in terms of his mental capacities, the ALJ emphasized that Plaintiff watches Netflix, utilizes GPS on his phone to get places, enjoys traveling, off-roading, and fixes bikes.  AR 30 (citing 93-94, 1257).  While Plaintiff disagrees with the ALJ’s assessment of this evidence, he offers only his own, alternative interpretation of Dr. Stafford’s assessment.  The record supports the ALJ’s findings, and even “if evidence exists to support more than one rational interpretation, [the reviewing court] must defer to the Commissioner’s decision.” *Batson*, 359 F.3d at 1193; *see also Biestek*, 587 U.S. at 103 (the threshold for sufficiency under the substantial evidence standard in Social Security cases “is not high”); *L.R.M.*, 2024 WL 4133813, at *11 (“It is not enough that L.R.M. point to evidence indicating she was treated for these conditions, she must also cite to evidence in the record explaining how these conditions affect her ability to work.”) (citing *Pierce v. Berryhill*, 2017 WL 2402829, at *3 (C.D. Cal. May 31, 2017) (rejecting claim that ALJ erred in failing to discuss evidence, explaining, “[a]lthough plaintiff cites various medical records describing her conditions, symptoms, and treatment, she does not show how such evidence translates into any specific functional limitations.”); *Eduardo Corona M. v. Berryhill*, 2019 WL 718111, at *3 (C.D. Cal. Feb. 19, 2019) (“The existence of an impairment, diagnosis, or symptoms, does not mean that Plaintiff suffered from a significant limitation in his ability to perform work activities.”).

### b.    Obesity

Throughout the relevant period, Plaintiff weighed around 550 pounds with a body mass index exceeding 60.  AR 1359, 1429, 1523.  Plaintiff was advised to undergo a gastric bypass revision surgery but needed to lose significant weight before he could undergo such surgery.  AR 1357, 1359, 1360.  Medical staff believed that Plaintiff’s health status was compromised by his morbid obesity.  AR 1360.  Although the ALJ found Plaintiff’s obesity was a severe impairment at step two of the sequential evaluation, AR 21, Plaintiff argues the ALJ failed to properly consider the limiting effects of his obesity when evaluating his symptom testimony and formulating his residual functional capacity.  Pl.’s Mot. at 14.

United States District Court
Northern District of California

1    Social Security regulations previously included obesity among the listings of impairments

2    that can categorically establish disability at step three, but the Social Security Administration

3    removed that listing in 1999.  Since then, the Commissioner has issued a series of rulings

4    addressing how obesity will be considered in assessing disability.  Most recently, the

5    Commissioner issued SSR 19-2p in 2019, superseding SSR 02-1p. SSR 19-2p, Titles II & XVI:

6    Evaluating Cases Involving Obesity, 2019 WL 2374244 (May 20, 2019).  Although obesity is no

7    longer a listed impairment, "the functional limitations caused by the MDI of obesity, alone or in

8    combination with another impairment(s), may medically equal a listing" if, for example, obesity

9    "increase[s] the severity of a coexisting or related impairment(s) to the extent that the combination

10   of impairments medically equals a listing."  *Id*. at *4.  Under the ruling, the Social Security

11   Administration "will not make general assumptions about the severity or functional effects of

12   obesity combined with another impairment(s)," but instead "evaluate[s] each case based on the

13   information in the case record" to determine how obesity affects other impairments.  *Id*.  "As with

14   any other impairment," the Social Administration must "explain how [it] reached [its] conclusion

15   on whether obesity causes any limitations."  *Id*.

16   In addition to assessing obesity at step three, the Social Security Administration also must

17   consider the limiting effects of obesity when assessing a person's RFC to determine whether the

18   claimant can perform their past work or available work at Steps 4 and 5.  *Id*.  The Social Security

19   Administration must "explain how [it] reached [its] conclusion on whether obesity causes any

20   limitations."  *Id*.  SSR 19-2p notes that obesity can affect the exertional functions of "sitting,

21   standing, walking, lifting, carrying, pushing, and pulling"; nonexertional functions including

22   "climbing, balancing, stooping, kneeling, crouching, and crawling"; range of motion of the spine

23   and extremities, and "the ability to sustain a function over time," including as a result of fatigue.

24   *Id*.

25   Here, the RFC includes limitations that account for obesity relative to exertion, postural

26   restrictions, and environmental restrictions.  AR 21 ("As required by SSR 19-2p, the undersigned

27   considered obesity.  The claimant's BMI was above 30 kg/m2, which is consistent with a

28   medically determinable impairment of obesity (SSR 19-2p).  For example, his BMI was 63.44

kg/m2 on September 27, 2021 (4F/7) and was 64.10 kg/m2 on October 26, 2022 (14F/4, 6).  He was noted as having gastric sleeve prior to the alleged onset date in 2015, and in April 2022, he consulted for additional bariatric surgery (14F/22).  Such evidence indicates that his obesity causes more than minimal limitations and is severe.").  The ALJ acknowledged that in early 2022, the only abnormality on examination was "related to an obese abdomen and weight" with walking limited by leg pain.  AR 28 (citing AR 1362-63).  The ALJ also recognized that in mid-2022 Plaintiff reported a mobility disorder.  *Id.* (citing AR 1527).  The ALJ also acknowledged that Plaintiff reported leg edema in July 2022, but she cited normal examination findings from that time.  *Id.* (citing AR 1521).  In direct relation to his obesity, the ALJ noted that "outside of one indication of a wide based gait and rarely noted decreased vibratory sensation in his feet, he had generally normal physical examination findings, including a normal gait, full range of motion, and strength."  AR 29 (citing 915, 955, 1521, 1527).  A review of the record fails to show where an abnormal gait was mentioned again.  The ALJ also referenced testimony that Plaintiff sometimes stands and sometimes sits, noting "only minimal and rare gait findings."  *Id.* (citing AR 1371-72).  The ALJ also credited opinions from Plaintiff's prior administrative proceedings, finding even greater restriction than those physicians.  AR 31.

        "An ALJ's explanation meets the low bar for sufficiency when the ALJ describes her reasoning with 'sufficient specificity and clarity to allow for meaningful review.'"  *Cracolici v. O'Malley*, 2024 WL 3873980, at *7 (N.D. Cal. Aug. 16, 2024) (quoting *Gomez-Perez v. Berryhill*, 2017 WL 810275, at *2 (C.D. Cal. Feb. 28, 2017) (cleaned up)).  In this case, the ALJ cleared that low bar by acknowledging the medical evidence of obesity and recognizing that some of Plaintiff's symptoms were exacerbated by his condition.  *See id.* ("Cracolici asserts that the ALJ failed to consider his obesity altogether when denying Social Security benefits.  That is simply not true.  The ALJ explicitly found that Cracolici's morbid obesity was a severe impairment. . . .  And later, when the ALJ was considering Cracolici's residual functional capacity, the ALJ provided an extensive discussion of Cracolici's obesity and repeatedly acknowledged Cracolici's obesity and weight during her review of the medical evidence."); *Burch*, 400 F.3d at 684 (acknowledgement of obesity and its effects on symptoms is sufficient); *Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir.

2016) (ALJ took into account obesity in forming the RFC by crediting opinion of doctor who considered plaintiff's weight in assessing functional abilities). Again, while Plaintiff argues for other additional corresponding limitations and disagrees with the ALJ's findings, he offers only his own, alternative interpretation of the evidence.

### c.    Summary

In sum, the Court finds the ALJ properly reviewed the record and specified reasons supported by substantial evidence in determining Plaintiff's RFC. As such, the Court must affirm the decision.

### E.    Peter Kao, M.D.

In his February 2023 questionnaire responses, Dr. Kao reported Plaintiff had a diagnosis of respiratory failure and morbid obesity, limited activity due to respiratory insufficiency, symptoms of shortness of breath with minimal exertion, required ventilator assistance at night, and had clinical findings of weak diaphragm muscles and restrictive lung disease. AR 1480. Dr. Kao opined that Plaintiff had significant limitations in his ability to walk, sit, stand, lift, and perform postural activities; and he would miss more than four days of work per month. AR 1481-83. He opined Plaintiff was incapable of tolerating even "low stress" jobs. AR 1481. The ALJ found

> Dr. Kao's opinion is not persuasive (19F). It is not well supported. He cites to impairments, with no significant pain, but shortness of breath with minimal exertion and notes some respiratory findings. While somewhat supported, as above, the actual numerical findings on pulmonary function tests were minimal. The indication that the claimant uses a ventilator at night (CPAP) is inconsistent with the claimant's reports regarding issues with settings. Dr. Kao provides little else in the way of findings to support the opinion. As for, consistency, the claimant works part-time in a standing job. He also had quite minimal gait or other physical examination findings to support the significant less than sedentary limitations with positional changes and postural preclusion. He had inconsistent cognitive findings, and his findings were not consistent with the indicated level of interference and difficulty handling stress, particularly given that he continues to work part-time. There is no evidence that his respiratory symptoms were exacerbated by stress. There is no support for the manipulative limitations, need for unscheduled breaks, absences, and neck limitations and these are not consistent with the physical examination findings and good activities of daily living. Dr. Kao notably dated this opinion back to 2015, a time after which the claimant engaged in substantial gainful activity. The doctor also notes only treating the claimant every nine months and only since January 2022.

United States District Court
Northern District of California

AR 32-33.

Plaintiff argues the ALJ failed to properly evaluate Dr. Kao's opinion because the results of pulmonary function testing were not "minimal."  Pl.'s Mot. at 7.  He notes spirometry testing showed he had progressively worsening FEV1 scores, going from 3.02 in May 2022 to 2.09 in December 2023, which according to Dr. Kao, reflected severe and progressive respiratory dysfunction.  *Id.* (citing AR 54-55, 864, 1395-96, 1488-89).  Plaintiff also notes he had an associated reduction in diaphragm strength, as documented through MEP and MIP testing.  *Id.* (citing AR 70, 1352, 1488, 1493).  As to the ALJ's finding that Dr. Kao's opinion was inconsistent with Plaintiff's ability to work on a part-time basis, Plaintiff argues "this was the only aspect of the 4-page opinion that was established to be inconsistent with the record.  Otherwise, Dr. Kao's assessment of exertional limitations based on respiratory insufficiency was consistent with the medical findings and not at odds with Plaintiff's ability to work part-time where his only duty was to stand in one place."  *Id.* at 8.  Plaintiff also notes Dr. Kao was the only pulmonology specialist to offer an opinion regarding his functional capacity and, as such, his opinion "deserved greater consideration with regard to his assessment of work restrictions arising from Plaintiff's pulmonary impairments."  *Id.*

### 1.    Legal Standard

Under the regulations that apply to Plaintiff's application, the Commissioner no longer gives specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians.  Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.").  "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."

*Woods*, 32 F.4th at 787.

Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions. *Id.* at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id.* at 791-92 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(2)). The third factor—"relationship with the claimant"—encompasses "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, . . . and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id.* (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)). The ALJ must explain how he considered supportability and consistency, and may, but is not required, to explain how he considered factors three, four, and five. *Id.*; *see also* 20 C.F.R. § 404.1520c(b)(2).

The "ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792 (cleaned up). "The agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (cleaned up) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

### 2.    Analysis

The Court finds the ALJ properly considered Dr. Kao's opinion and found it was not persuasive because it was not well supported and inconsistent with Plaintiff's own reports. As stated above, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. For instance, while Dr. Kao cited shortness of breath with minimal exertion, the ALJ noted "the actual numerical findings on pulmonary function tests were minimal." AR 33. This is consistent with Plaintiff's pulmonary testing, which showed his FEV1 scores were all higher than Listing 3.02. AR 54-55, 1395, 1439, 1489. While Dr. Kao indicated Plaintiff required a ventilator at night, the ALJ found Dr. Kao

24

provided "little else in the way of findings to support the opinion," and that it was inconsistent with Plaintiff's reports regarding his actual use of a breathing machine and issues he had with settings.  AR 33.  While Dr. Kao opined that Plaintiff was incapable of even "low stress" jobs, the ALJ found this was inconsistent with the record, which contains "no evidence that his respiratory symptoms were exacerbated by stress," and with Plaintiff's part-time job in which he stood for up to six hours at a time.  *Id.*; *see Bowen v. Kijakazi*, 2022 WL 2610242, at *1 (9th Cir. July 8, 2022) ("'An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled[.]'") (quoting *Ford*, 950 F.3d at 1156).  The ALJ also found Dr. Kao failed to provide support for the manipulative limitations, need for unscheduled breaks, absences, and neck limitations, and that such limitations were not consistent with the physical examination findings and good activities of daily living.  AR 33; *see also* AR 29 (noting that examinations generally showed normal and unassisted gait, intact coordination, and improved left shoulder strength and range of motion) (citing AR 915, 955, 1521, 1527).  The ALJ also noted that Dr. Kao dated his opinion back to 2015, but "[t]he doctor also notes only treating the claimant every nine months and only since January 2022."  AR 33.

In sum, the Court finds the ALJ provided an explanation supported by substantial evidence as to why she found Dr. Kao's opinion was not persuasive.  In so finding, the ALJ explained how she considered both supportability and consistency.  As such, the decision must be affirmed.  *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

## VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: October 10, 2025

THOMAS S. HIXSON
United States Magistrate Judge